**Entered on Docket
October 15, 2012**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the
Memorandum Decision of the Court.
Signed October 15, 2012

_____
Roger L. Efremsky
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| In re FRANCES RENEE NORTH,<br><br>Debtor. | Case No. 11-72843<br><br>Chapter 13 |

**MEMORANDUM DECISION RE TRUSTEE'S OBJECTION
TO CONFIRMATION OF CHAPTER 13 PLAN**

**A. Introduction**

Frances Renee North ("North") filed this chapter 13 case on December 8, 2011. This case was filed approximately two and one-half years after North received a discharge in a prior chapter 7

//
//
//
//

-1-

case.[1] She is not entitled to a discharge in this case. Bankruptcy Code § 1328(f).[2] North's plan proposes to strip a lien on her principal residence. The trustee objects to confirmation on the grounds that North's plan can not be confirmed because North cannot strip this lien without a discharge.

For the reasons explained below, the court overrules the trustee's objection.

**B. Jurisdiction**

This court has subject matter jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), (L), (O).

**C. Background**

    **1. North's Schedules**

On schedule A, North lists her principal residence with a value of $614,600. Docket no. 1. On schedule D, she states that

---

[1] See case no. 08-45500 filed by debtor pro se on September 29, 2008 as a chapter 13 case, converted to chapter 7 by debtor on February 9, 2009, and discharge order entered on May 21, 2009. Her schedules listed assets of $730,603 and liabilities of $913,791 of which $859,000 was secured, and $54,791 was unsecured non-priority. The court notes these additional cases listed on debtor's current petition: 11-42239, 11-48117, 11-71439, all of which were filed by debtor pro se and all of which were dismissed for failure to complete required filings.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all Bankruptcy Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all Civil Rule references are to the Federal Rules of Civil Procedure.

Wachovia Mortgage holds the first priority lien on her residence securing a debt of $748,433, and CLC Consumer Services ("CLC") holds a second priority lien securing a debt of $39,439. Docket no. 1. Schedule F lists no unsecured debt. Her schedule I indicates monthly income of $5,082, from social security and from "income from real property." Her schedule J indicates monthly net income of $1,179.02.

**2. North's Chapter 13 Plan and the Confirmation Process**

North's chapter 13 plan calls for payments of $1,182.93 per month for 60 months and payment to unsecured creditors on a pro tanto basis. The plan also states that she intends to file a motion to avoid the CLC lien because CLC is wholly unsecured. Docket no. 2.

The trustee has objected to confirmation and requested dismissal of the case. Docket nos. 15, 20. The trustee argues that the plan is not feasible because North may not permanently strip CLC's lien because she is not eligible for a discharge. The trustee relies primarily on the reasoning of In re Victorio, 454 B.R. 759 (Bankr. S.D. Cal. 2011), aff'd, 470 B.R. 545 (S.D. Cal. 2012). The debtor has not briefed this issue.

The meeting of creditors was held and concluded on January 19, 2012. The trustee gave notice to all creditors that a confirmation hearing would be held on March 20, 2012 and the confirmation hearing was thereafter continued to June 19, 2012 at which point the matter was taken under submission.

**3. North's Motion to Avoid Lien**

North filed a motion to avoid the CLC lien on January 18, 2012. Docket nos. 16, 17. CLC was properly served with this

-3-

motion and has not responded to it. North requested and obtained a default order on February 12, 2012. However, the court vacated it in light of the trustee's pending objection. Docket nos. 22, 23.

**D. Discussion**

The trustee's objection raises one essential issue: may the CLC lien be permanently stripped when the debtor is not entitled to a discharge.

The arguments for and against permitting lien stripping in this chapter 20 context are well established. The competing views are explained in In re Victorio, 454 B.R. 759; In re Gerardin, 447 B.R. 342 (Bankr. S.D. Fla. 2011) (against allowing it) and In re Tran, 431 B.R. 230 (Bankr. N.D. Cal. 2010), In re Hill, 440 B.R. 176 (Bankr. S.D. Cal. 2010), In re Okosisi, 451 B.R. 90 (Bankr. D. Nev. 2011), In re Scantling, 465 B.R. 671 (Bankr. M.D. Fla. 2012), In re Fisette, 455 B.R. 177 (8th Cir. BAP 2011) (in favor of allowing it). This court now joins the latter group of cases and endorses the reasoning of these cases.

**1. CLC Does Not Have an Allowed Secured Claim**

To participate in a chapter 13 case, a creditor must have a "claim" as defined in § 101(5) of the Bankruptcy Code. A claim is either deemed "allowed" under § 502(a), or "disallowed" according to § 502(b). An allowed claim is paid according to the terms of the chapter 13 plan and a disallowed claim is not so paid.

In the most general sense, a claim is "secured" if a creditor holds a security interest in, or lien on, collateral

-4-

owned by a debtor. See § 101(37). Section 506(a)[3] bifurcates such a claim into secured and unsecured pieces based on the value of the collateral, and such a claim is classified for plan purposes accordingly.

Again, in the most general sense, lien rights survive bankruptcy. Long v. Bullard, 117 U.S. 617, 620-21 (1886). Although § 506(d) provides that to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, Dewsnup v. Timm, 502 U.S. 410, 417 (1992), holds that a chapter 7 debtor may not avoid a lien based on the value of the collateral and the amount of senior liens. Nonetheless, lien avoidance is broadly permitted in reorganization chapters and a chapter 13 debtor may do what a chapter 7 debtor may not. In re Enewally, 368 F.3d 1165, 1169-70 (9th Cir. 2004); In re Bartee, 212 F.3d 277, 291, n. 21 (5th Cir. 2000).

Johnson v. Home State Bank, 501 U.S. 78 (1991), holds that a discharge in a chapter 7 case extinguishes the chapter 7 debtor's personal liability for a secured debt, but because the discharge does not extinguish liens, it does not extinguish such a creditor's *in rem* rights. When that debtor files a subsequent chapter 13 case, these *in rem* rights constitute a claim under the definition in § 101(5) that may be restructured in that debtor's chapter 13 plan.

---

[3] According to § 506(a),"An allowed claim of a creditor secured by a lien on property in which the estate has an interest,... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property,... and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim."

-5-

Section 1322(b)(2) provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." <u>Nobelman v. American Savings Bank</u>, 508 U.S. 324, 328 (1993) discusses the interplay of § 506(a) and § 1322(b)(2). In <u>Nobelman</u>, the Supreme Court reasoned that the debtor was correct in looking to § 506(a) for a judicial valuation of a creditor's collateral to determine the status of that creditor's secured claim. However, when this valuation shows that the creditor is partially secured, it is still the "holder of a secured claim" and it has the right to the protection against modification of its secured claim provided in § 1322(b)(2). <u>Id</u>. at 328.

In <u>In re Zimmer</u>, 313 F.3d 1220 (9th Cir. 2002), the Ninth Circuit answered the question left after <u>Nobelman</u>. <u>Zimmer</u> holds that the protection against modification in § 1322(b)(2) does not extend to a creditor with a lien on the debtor's principal residence when its lien does not attach to *any* value. By operation of § 506(a), this creditor is not the "holder of a secured claim." Thus, "[t]he district court erred in holding that a wholly unsecured lien may not be avoided in a Chapter 13 proceeding." <u>Id</u>. at 1222.

As summarized in <u>In re Scantling</u>, 465 B.R. 671 (Bankr. M.D. Fla. 2012):

> There is a difference between the term of art "secured claim," on the one hand, and the notion that a creditor has a security interest or lien outside of bankruptcy, on the other hand. Having a security interest or lien outside of bankruptcy is translated under bankruptcy laws as having the "rights" of a secured creditor, not necessarily as being the holder of a secured claim. Once a determination has been

-6-

made under § 506 that the remaining *in rem* claim is wholly unsecured and that the creditor holds no secured claim in the bankruptcy case, the creditor is left with its nonbankruptcy rights. The debtor may then modify those "rights" under § 1322(b)(2).

In re Scantling, 465 B.R. at 680.

Based on all of the foregoing authority and the undisputed factual record here, the court concludes that CLC is not the holder of an "allowed secured claim" and § 1322(b)(2) permits North to modify CLC's rights in her chapter 13 plan as she has proposed.

**2. Lien Stripping is Not Dependent on Receipt of a Discharge**

The trustee's objection is based on § 1325(a)(5).[4] Section 1325(a)(5) presents a holder of an allowed secured claim with three choices regarding its treatment under a proposed chapter 13 plan: (1) it may accept the plan's proposed treatment under § 1325(a)(5)(A); (2) it may accept the surrender of its collateral under § 1325(a)(5)(C); or (3) by timely filing an

---

[4] Section 1325(a)(5) provides: "with respect to each allowed secured claim provided for by the plan--
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that--
    (I) the holder of such claim retain the lien securing such claim until the earlier of--
    (aa) the payment of the underlying debt determined under nonbankruptcy law; or
    (bb) discharge under section 1328; and
    (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; ...
    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder[.]"

-7-

objection, a holder of an allowed secured claim may demand the treatment specified in § 1325(a)(5)(B).

**a. Section 1325(a)(5)(A) Permits Acceptance by Silence**

Assuming for the sake of argument that CLC is the holder of an allowed secured claim, on the facts of this case, it has accepted the proposed plan treatment by its silence. <u>In re Andrews</u>, 49 F.3d 1404 (9th Cir. 1995). When notice of the plan terms and the motion to value is proper - as they were in this case - silence is deemed acceptance. The plan clearly identified CLC as the creditor, it clearly identified the property affected and clearly stated that CLC would be treated as an unsecured creditor. The motion to value did the same. On this record, there are no concerns regarding compliance with due process.[5]

Despite the clear structure in § 1325(a)(5), the trustee asserts that acceptance in this context may not be accomplished by silence. Other than one unpublished bankruptcy court decision from the Central District of California,[6] the trustee offers no authority for the proposition that there is an "important property rights" exception to § 1325(a)(5)(A). In fact, there is no such exception in the Bankruptcy Code and this court declines the invitation to add one. The failure to object translates into acceptance of the plan by the secured creditor and the trustee

---

[5] Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950).

[6] <u>In re Winitzky</u>, 2009 Bankr. LEXIS 2430 (C.D. Cal. May 7, 2009).

-8-

may not thwart the effect of acceptance.

### b. Section 1322(b)(2) Permits Modification of State Law Lien Rights Without a Discharge

As explained above, § 1325(a)(5) does not apply where the debtor is modifying the state law lien rights of a creditor that does not hold an allowed secured claim.

Nonetheless, the trustee's argument focuses on the language of § 1325(a)(5)(B)(i)(I) (requiring that the plan provide for the holder of an allowed secured claim to retain its lien until the earlier of the payment of the underlying debt or discharge under § 1328), and (II) (providing for retention of a lien if a case is dismissed or converted without plan completion). The cases supporting this argument contend that this section, in conjunction with § 506(d), make permanent lien avoidance depend on discharge. In re Victorio, 454 B.R. 759.[7] These cases reason that if Congress had intended to allow lien stripping to be permanent on completion of a chapter 13 plan, it would have made that clear in § 1325.

For the reasons explained in In re Tran, 431 B.R. 230; In re Hill, 440 B.R. 176; In re Okosisi, 451 B.R. 90; and In re Scantling, 465 B.R. 671, this court finds this Congressional intent argument and the decisions making permanent lien stripping depend on discharge unpersuasive.

This court agrees that nothing in § 1325 conditions plan

---

[7] Among the many cases reaching this conclusion, see also In re Jarvis, 390 B.R. 600 (Bankr. C.D. Ill. 2008); In re Fenn, 428 B.R. 494 (Bankr. N.D. Ill. 2010); In re Gerardin, 447 B.R. 342 (Bankr. S.D. Fla. 2011); In re Quiros-Amy, 456 B.R. 140 (Bankr. S.D. Fla. 2011).

-9-

confirmation on eligibility for a discharge. Nothing in § 1322, § 506 or any other section of the Bankruptcy Code provides that a chapter 13 debtor's right to strip off liens is conditioned on eligibility for a discharge. In re Tran, 431 B.R. 230, 235.

Section 350(a)[8] and Rule 5009[9] contemplate closing a case once an estate has been fully administered. The fact that § 349(b)(1)(C)[10] provides for reinstatement of an avoided lien upon dismissal does not lead to a conclusion that chapter 20 lien stripping is precluded. The fact that § 348(f)(1)(C)[11] provides for secured claims to continue to be secured following conversion of a chapter 13 case to chapter 7 offers no support either. The court sees no restriction on closing a case without a discharge upon plan completion.

The cases which prohibit lien stripping in this context also

---

[8] According to § 350(a) after an estate is fully administered and the court has discharged the trustee, "the court shall close the case."

[9] Rule 5009(a) provides a presumption that an estate has been fully administered upon the occurrence of certain events and Rule 5009(b) provides that a chapter 13 case may be closed without entry of a discharge when the statement required by Rule 1007(b)(7) (regarding the financial management course) is not timely filed. Nothing suggests that this provision excludes other reasons to close a case without a discharge.

[10] Section 349(b) provides that unless the court, for cause, orders otherwise, a dismissal of a case reinstates any lien voided under § 506(d).

[11] According to § 348(f)(1)(C), for cases converted from chapter 13, the claim of a creditor holding security as of the date of the filing continues to be secured unless the full amount of such claim has been paid in full as of the date of conversion, notwithstanding any valuation or determination of the amount of an allowed secured claim made for chapter 13 purposes.

-10-

find Congressional intent in the fact that § 1328(f)(1) precludes a chapter 13 debtor from receiving a discharge if the debtor received a discharge in a chapter 7 case filed within four years of the chapter 13 case. These courts see lien stripping as a "de facto discharge." In re Frazier, 469 B.R. 889, 895, n. 8 (E.D. Cal. 2012) (collecting cases).

As the Okosisi court did, this court "declines any invitation to guess Congress's intention when it passed BAPCPA. If Congress's goal was to limit the operation of sections 1322(b)(2) and 1327 as well as discharge, it could have explicitly drafted the statute to achieve this goal. As it did not, the court will not read any further restrictions into the Bankruptcy Code." In re Okosisi, 451 B.R. 90, 100; In re Waterman, 469 B.R. 334, 340 (D. Colo. 2012) (if Congress had wanted to prohibit a chapter 20 debtor from stripping off a wholly unsecured lien on his principal residence, it could have easily done so; court will not read additional restrictions into statute.)[12]

Under § 1327(a), a confirmed plan is "binding on the debtor and each creditor whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Sections 1327(b) and (c) provide that "except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor," and

---

[12] The court also notes that inability to obtain a discharge is not included in the list of factors to consider as cause to dismiss a chapter 13 case in § 1307(c).

-11-

except as otherwise provided, it vests "free and clear of any claim or interest of any creditor provided for by the plan."

This court agrees with <u>Tran</u>, <u>Okosisi</u> and <u>Hill</u> that the permanence of lien stripping in the chapter 20 context depends on completion of all plan payments. See <u>In re Tran</u>, 431 B.R. 230, 235 (lien stripping permanent on performance and plan completion); <u>In re Okosisi</u>, 451 B.R. 90, 100 (successful completion of plan payments makes lien avoidance permanent); <u>In re Hill</u>, 440 B.R. 176, 182 (lien stripped under plan remains until plan is consummated).

**3. Good Faith Issues**

Good faith is always a consideration in the chapter 13 confirmation context and the court has an independent duty to review a chapter 13 plan to ensure it complies with the Bankruptcy Code. <u>United Student Aid Funds v. Espinosa</u>, 130 S. Ct. 1367 (2010). The court may not confirm a plan without a finding that the plan has been "proposed in good faith and not by any means forbidden by law." § 1325(a)(3). The court is guided here by <u>In re Warren</u>, 89 B.R. 87, 93-95 (9th Cir. BAP 1988) (court should not confirm plans that are in essence veiled chapter 7 cases; listing good faith factors), and <u>In re Goeb</u>, 675 F.2d 1386, 1390 (9th Cir. 1982) (court must inquire whether debtor has misrepresented facts in plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed plan in an inequitable manner; though court may consider substantiality of proposed repayment, it must make good-faith determination in light of all militating factors.)

Here, North has a clear need for bankruptcy and nothing

-12-

indicates she is acting inequitably or unfairly. Her plan provides for payments of $1,182.93 per month for 60 months and a pro tanto distribution to unsecured creditors. She is devoting her monthly disposable income to her plan payments. She will pay a mortgage arrearage of $32,801 through her plan as well as secured debt to Capital One Auto Finance. (The court notes that only two claims have been filed - the Franchise Tax Board has filed a claim stating it is owed $2,008 on an unsecured basis and $7,212 on a priority basis and Capital One Auto Finance has filed an unsecured deficiency claim.)

On this record, the court finds no basis to question North's good faith or her need for reorganization under chapter 13.

**E. Conclusion**

The lien stripping proposed by North's plan is permissible and it will be permanent upon completion of the plan. The trustee's objection to confirmation is overruled. However, the plan is not feasible until North obtains an order on the motion to avoid CLC's lien.

The court now requests North to resubmit her default order on the motion to avoid CLC's lien and requests the trustee to submit an order conforming to this memorandum decision following entry of an order on the motion to avoid CLC's lien.

\* \* \* END OF MEMORANDUM DECISION \* \* \*

-14-

**Court Service List**

Debtor-

Frances Renee North
1071 Silver Maple Lane
Hayward, CA 94544

Debtor's counsel-

Eric J. Gravel
285 S El Camino Real
San Mateo, CA 94403

Ch 13 Trustee-

Martha G. Bronitsky
P.O. Box 9077
Pleasanton, CA 94566

All ecf participants

-15-